UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AIRAVEE C.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C22-5323-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in: (1) assessing the medical opinions and evidence; (2) discounting her testimony; (3) discounting the lay testimony from her roommate/significant other, D.C.; [1] and (4) evaluating Plaintiff's residual functional capacity ("RFC") and formulating the hypothetical to the vocational expert ("VE") at step five. (Dkt. # 16 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

---

[1] Because this Order contains potentially sensitive medical information, the Court refers to Plaintiff's roommate/significant other by his initials.

ORDER - 1

## II.    BACKGROUND

Plaintiff was born in 1982, has a high school education and associates degree, and has worked as a receptionist and administrative clerk. AR at 78, 84, 42. Plaintiff was last gainfully employed in 2015. *Id.* at 85.

On September 21, 2018, Plaintiff applied for benefits, alleging disability as of January 5, 2016. AR at 19. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted hearings on July 21, 2020, November 25, 2020, and March 31, 2021, the ALJ issued a decision on May 28, 2021, finding Plaintiff not disabled. *Id.* at 19-44.

Using the five-step disability evaluation process,[2] the ALJ found that Plaintiff has the following severe impairments: diabetes, hypertension, obesity, and mental health diagnoses variously diagnosed as panic disorder, generalized anxiety disorder, obsessive compulsive disorder, major depressive disorder, bipolar disorder, borderline personality disorder, attention-deficit hyperactivity disorder ("ADHD"), and post-traumatic stress disorder ("PTSD"). AR at 22. The ALJ subsequently determined that Plaintiff retained an RFC for light work with several additional postural, environmental, exertional, cognitive, and social limitations. *Id.* at 26. Relying on the opinion of a VE who testified that an individual with such an RFC could perform jobs existing in significant numbers in the economy, including hotel-motel housekeeper, office helper, and small products assembler I or II, the ALJ concluded that Plaintiff was not disabled. *Id.* at 43-44.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 7.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds* by 20 C.F.R. § 416.920(a) (citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

1

## IV.     DISCUSSION

2

### A.     The ALJ Did Not Err in Discounting Plaintiff's Testimony.

3
      The ALJ summarized Plaintiff's allegations and explained that he discounted her

4

testimony based on: (1) Plaintiff's malingering and misrepresentations; (2) Plaintiff's

5

conservative treatment; (3) inconsistencies with Plaintiff's activities of daily living; and (4)

6

inconsistencies with the longitudinal medical evidence. AR at 27-33. Plaintiff contends that the

7

ALJ's reasons are not clear and convincing. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.

8

2022) (confirming that the "clear and convincing" standard continues to apply). The Court will

9

address each of Plaintiff's arguments in turn.

10
                    *1.     Legal Standards*

11
      At the outset, the Court notes that affirmative evidence of symptom magnification, or

12

malingering, as there was here, relieves an ALJ from the burden of providing specific, clear, and

13

convincing reasons for discounting a claimant's testimony. *See Morgan v. Comm'r of Soc. Sec.*

14

*Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010)

15

(upholding finding where ALJ "pointed to affirmative evidence of malingering"). In cases

16

involving an affirmative finding of malingering, such as this one, the Court's standard of review

17

for the ALJ's treatment of a claimant's testimony is for "substantial evidence," rather than for

18

"clear and convincing" reasons. *See Austin v. Saul*, 818 F. App'x 725, 729 (9th Cir. 2020)

19

(discussing *Reddick v. Chater*, 157 F.3d 715, 720, 722 (9th Cir. 1998)); *St. Clair v. Saul*, 776 F.

20

App'x 447 (9th Cir. 2019) (discussing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

21

1160 (9th Cir. 2008)) (adverse credibility finding need not be based on clear and convincing

22

evidence where there is affirmative evidence that the claimant is malingering.

23

1

2.       *Malingering and Misrepresentations*

2       The ALJ here found that Plaintiff malingered when she failed to disclose to Washington

3  State Department of Social and Health Services ("DSHS") examining physicians and

4  psychologists the full extent of her activities, which included running a rental business with her

5  significant other and doing maintenance and repairs on her home after a fire. AR at 29 (citing *id.*

6  at 764) (Plaintiff's therapist, Leila Meas, notes in January 2019 that Plaintiff had "taken on quite

7  a busy schedule with [two] internships over the summer, working at the support center at the

8  college, doing maintenance and repairs on her home after a fire, running the rental business with

9  her significant other, as well as raising her two children," and that "Plaintiff ha[d] been able to

10  manage her anxiety, anger, and emotions as well during this time" even "under the pressure")**.**

11  The ALJ further noted that Plaintiff had engaged in "a pattern of misrepresenting her relationship

12  with her significant other[, D.C.]" as simply her roommate in the disability proceedings. *Id.* at

13  27, 29 (providing numerous citations where Plaintiff reported living with her "significant other").

14  The ALJ held that the difference between "roommate" and "significant other" was material

15  because Plaintiff's "long-term relationship shows she has greater relational stability than she

16  portrays and that she has a significant other who provides more support than she cares to disclose

17  in" disability proceedings. *Id.* at 27. The ALJ further noted that Plaintiff misrepresented her

18  "management work activity at the trailer park where she resides." *Id.* at 29.

19       Plaintiff argues that the ALJ erred in finding malingering and misrepresentations on her

20  part, contending that she disclosed her activities to the DSHS evaluators. (Dkt. # 16 at 10-12.)

21  Plaintiff does not contest that D.C. was her significant other; instead she argues that the term

22  "roommate" was "interchangeable" with "significant other," and that the precise label was not

23  material. (*Id.* at 10.)

1    Plaintiff's arguments and related record citations, however, fail to undermine the ALJ's

2    finding of malingering. Indeed, DSHS psychologists Dr. Wheeler's and Dr. Budwey's records

3    and opinions, to which the ALJ cites, demonstrate that Plaintiff downplayed the role D.C. played

4    in her life in statements that she provided in settings related to her disability proceedings. *See* AR

5    at 442-43, 445, 1187-88; *cf. id.* at 27 (citing *id.* at 449, 464, 565, 625, 925, 1300, 297, 330)

6    (Plaintiff frequently refers to D.C. as her "significant other" or "boyfriend" in non-

7    disability-related settings from 2018-2021); *see also id.* at 88 (Plaintiff testifies regarding her

8    "roommate," whom she identifies as D.C.). Additionally, Plaintiff has not shown that the ALJ

9    erred in his findings regarding her failure to disclose activities to DSHS evaluators, including her

10    rental business, maintenance, and repairs. For these reasons, the ALJ's findings regarding

11    Plaintiff's malingering were supported by substantial evidence.

12                   3.    *Activities of Daily Living*

13    Plaintiff also argues in a conclusory fashion that the ALJ erred in finding

14    inconsistencies between her testimony and her activities of daily living. (Dkt. # 16 at 11 (arguing

15    without explanation that "none of [Plaintiff's] activities are inconsistent with her testimony, none

16    . . . 'meet the threshold of transferable work skills,' and none . . . show that she could perform

17    any type of full-time competitive work on a sustained basis.").) However, Ninth Circuit law is

18    clear that "an ALJ 'may discredit a claimant's testimony when the claimant reports participation

19    in everyday activities indicating capacities that are transferable to a work setting,'" *or* based on a

20    claimant's "daily activities 'to the extent that they contradict claims of a totally debilitating

21    impairment,' even if 'those activities suggest some difficulty functioning.'" *Chipman v.*

22    *Berryhill*, 765 F. App'x 264, 265 (9th Cir. 2019) (discussing and quoting *Molina*, 674 F.3d at

23    1113); *accord Wennet v. Saul*, 777 F. App''x 875, 877 & n.3 (9th Cir. 2019) (discussing *Molina*,

674 F.3d at 1113) (holding that Plaintiff's travel, vacations, and help with a move contradicted her "claims of a totally debilitating impairment," and explicitly rejecting the dissent's assertion that "activities of daily living are relevant only if they establish a claimant's ability to engage in physical functions transferable to a work setting").

Here, the ALJ's inconsistency findings were supported by substantial evidence because several of Plaintiff's activities, including her management of the trailer park and rental business with D.C., as cited by the ALJ, suggest both that she possessed functional capacities that were indeed "transferable to a work setting" and that contradicted claims of a totally debilitating impairment. *See* AR at 29; *see also Molina*, 674 F.3d at 1113 (citing *Morgan*, 169 F.3d at 600).

### 4.    *Additional Arguments*

Plaintiff's additional arguments regarding her testimony lack merit. She argues that the ALJ's errors in assessing the medical opinion evidence tainted his assessment of her testimony. (Dkt. # 16 at 7.) As noted below, the Court finds no error in the ALJ's assessment of the medical opinion evidence. Plaintiff further contends that the ALJ cannot solely reject her testimony based on a lack of objective evidence. (*Id.* at 13.) However, the ALJ did not rely solely on a lack of objective evidence; thus, this line of argument similarly fails to establish error in the ALJ's decision.

Accordingly, the ALJ's evaluation of Plaintiff's testimony was supported by substantial evidence for the reasons discussed above.

### B.    **The ALJ Did Not Err in Discounting Lay Testimony.**

### 1.    *Plaintiff's Roommate/Significant Other, D.C.*

The record also contains a May 2019 third-party function report completed by Plaintiff's significant other/roommate, D.C., describing Plaintiff's physical and mental limitations. AR at

346-53. The ALJ found D.C.'s testimony unpersuasive for the same reasons that he found Plaintiff's testimony unpersuasive. *Id.* at 40. Additionally, the ALJ found that D.C., like Plaintiff, misrepresented himself to the Social Security Administration ("SSA") as Plaintiff's "roommate" rather than her significant other, calling into question the reliability and accuracy of his statements. *Id.*

Again, Plaintiff does not refute that D.C. was her significant other, but instead argues that "there is no evidence" that D.C. was her significant other at the time he filled out the function report. (Dkt. # 16 at 17; dkt. # 23 at 9.) She further contends that even if D.C. was her significant other, his identity as such should not have impacted the ALJ's evaluation of his testimony. (*Id.*)

However, as noted by the ALJ, there is indeed evidence from 2018-2021 that D.C. was Plaintiff's significant other. *See* AR at 27 (multiple citations), 29. This evidence includes multiple statements that Plaintiff made to her therapists and to her physicians around the very time that D.C. completed his function report in 2019. *See, e.g., id.* at 755 (Plaintiff refers to D.C. as her "boyfriend" during April 2019 session with therapist Meas); *id.* at 743 (Plaintiff's January 2019 visit with therapist Nicole Browning), *id.* at 764 (Plaintiff's July 2019 visit with therapist Meas). The ALJ was entitled to evaluate D.C.'s credibility, which in this case necessarily included Plaintiff's and D.C.'s apparent attempts to conceal the nature of their relationship in conjunction with the disability proceedings. *See David I. K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-5904-DWC, 2022 WL 4008216, at *2 (W.D. Wash. Sept. 2, 2022) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("[q]uestions of credibility are solely within the control of the ALJ")).

Plaintiff also advances the same conclusory arguments regarding the consistency of D.C.'s statements with the record and her activities as she did regarding her own testimony.

1   (Dkt. # 16 at 17-18.) As explained above, the Court finds no error in the ALJ's assessment of

2   Plaintiff's testimony, and the ALJ's reasoning in that regard applies with equal force to D.C.'s

3   similar testimony. *See, e.g.*, *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th

4   Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the

5   claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to

6   such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay

7   witness's] testimony"); *see also Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at *2 (9th

8   Cir. Dec. 7, 2022) (suggesting that the Ninth Circuit's pre-2017 standard requiring "germane"

9   reasons to reject lay witness testimony applies to an ALJ's evaluation of lay witness testimony

10  post-2017, and applying the "germane reasons" standard to ALJ's evaluation of third-party

11  function report from claimant's husband). Accordingly, Plaintiff has not established legal error in

12  the ALJ's assessment of D.C.'s statement.

13              *2.      SSI Facilitator, Marilyn Meldrich*

14          The record also contains three in-person statements from DSHS SSI facilitator, Marilyn

15  Meldrich, dated September 2018, March 2019, and July 2019.[3] AR at 305-06, 325-27, 354.

16  During her 2019 interviews with Plaintiff, Ms. Meldrich observed that Plaintiff had memory and

17  concentration issues. *Id.* at 354, 325. In July 2019, Ms. Meldrich also observed that Plaintiff

18  experienced pain while sitting and that she was slow to rise to standing. *Id.* at 354.

19  _____

20  [3] An SSI facilitator is an employee of the Washington State DSHS and not the Social Security
    Administration ("SSA"). *See Maureen P. v. Kijakazi*, No. 1:20-CV-03240-MKD, 2022 WL 1843988, at
    *11 (E.D. Wash. Feb. 23, 2022). When SSA denies an application at the initial, reconsideration, or
21  hearing level, and a claimant is receiving state disability benefits, "the SSI Facilitator reviews the SSA
    determination and performs a brief review of all available medical evidence to identify if the client's
    conditions have improved or deteriorated." Washington State Department of Social and Health Services,
22  SSI Facilitation - SSA Determinations and Appeals (July 13, 2018), https://www.dshs.wa.gov/esa/social-
    services-manual/ssi-facilitation-ssa-determinations-and-appeals (last visited Feb. 24, 2023). Here, Ms.
    Meldrich interviewed Plaintiff following the SSA's denial of benefits initially, following reconsideration,
23  and after the ALJ hearings.

ORDER - 9

1    The ALJ found that Ms. Meldrich was not an acceptable medical source and discounted

2    Ms. Meldrich's "assessed difficulties" as inconsistent with evidence regarding: (1) Plaintiff's

3    "typically intact or normal memory" and Plaintiff's alert and oriented mental state in most of her

4    mental status examinations; (2) Plaintiff's activities and tasks that required concentration and

5    persistence; and (3) Plaintiff's conservative treatment for back pain. AR at 40. Plaintiff argues

6    that the ALJ's characterization of Ms. Meldrich's "observations" as "assessed difficulties" was

7    erroneous. (Dkt. # 16 at 16.) She suggests that the fact that Ms. Meldrich's "observations" were

8    not consistent with the evidence relied on by the ALJ was not a "germane" reason to reject her

9    testimony. (*Id.*)

10    Here, the ALJ was entitled to weigh the credibility of Ms. Meldrich's statements –

11    regardless of whether they were labeled "observations" or "assessments." Moreover, because the

12    ALJ provided sufficient reasons for finding Plaintiff less than fully credible, to the extent that the

13    SSI facilitator reiterated the same reasons for rejecting Ms. Meldrich's testimony, those reasons

14    were germane. *See Valentine*, 574 F.3d at 694; *see also Bayliss*, 427 F.3d at 1218 ("Germane

15    reasons for discrediting a lay-witness's testimony include inconsistency with the medical

16    evidence and the fact that the testimony 'generally repeat[s]' the properly discredited testimony

17    of a claimant."). Plaintiff has not shown that the ALJ mischaracterized the record or failed to

18    apprehend the scope of her treatment. Thus, the ALJ did not err in evaluating the SSI facilitator's

19    report. *See Al-Mirzah v. Astrue*, No. C09-1671-JLR-BAT, 2010 WL 2757096, at *10 (W.D.

20    Wash. June 25, 2010), *report and recommendation adopted*, No. C09-1671-JLR, 2010 WL

21    2754350 (W.D. Wash. July 12, 2010) (holding that ALJ provided a germane reason for giving

22    the SSI facilitator's statements little weight where she "largely relayed [the claimant's]

23    subjective complaints" and the ALJ found the claimant less than fully credible).

1    **C.      The ALJ Did Not Err in Assessing the Medical Opinion Evidence.**

2          Plaintiff also challenges the ALJ's assessment of multiple medical opinions, each of

3    which the Court will address in turn.[4]

4          *1.      Legal Standards*

5          Under regulations applicable to this case, the ALJ is required to articulate the

6    persuasiveness of each medical opinion, specifically with respect to whether the opinions are

7    supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). An

8    ALJ's consistency and supportability findings must be supported by substantial evidence. *See*

9    *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

10         *2.      Examining DSHS Psychologist, Dr. Siobhan Budwey*

11         Dr. Budwey interviewed Plaintiff and administered a mental status examination on June

12   18, 2018. AR at 442-46. Based on her examination and testing, she found that Plaintiff's

13   memory, concentration, fund of knowledge, and insight and judgment were not within normal

14   limits. *Id.* at 446. Dr. Budwey opined that Plaintiff possessed several marked limitations,

15   including in her abilities to adapt to changes in a routine work setting, communicate and perform

16   effectively in a work setting, maintain appropriate behavior in a work setting, and to complete a

17   normal workday and work week without interruptions from psychologically based symptoms. *Id.*

18   _____

19   [4] Plaintiff's opening brief also summarizes various medical findings, several of which are not explicitly
     tied to any particular error in the ALJ's decision. (Dkt. # 16 at 7-9.) This Order focuses on the errors
20   *explicitly* identified in Plaintiff's briefing and does not address Plaintiff's summaries of evidence that are
     not specifically tied to a challenged medical opinion or other error because, as recognized by the Ninth
     Circuit, simple summaries of evidence lack the clarity and delineation required for appellate review. *See*
21   *Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022) (noting that claimant waived "any
     argument based on [clinical] findings" where claimant, who was represented by the same counsel as the
22   instant case, "simply list[ed] numerous clinical findings, unaccompanied by argument"). It is not this
     Court's job to "manufacture arguments where none is presented." *See Indep. Towers of Wash. v.*
     *Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see also Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir.
23   2007) ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw
     fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them.'").

1    at 444. Dr. Budwey opined that the overall severity of Plaintiff's mental impairments was

2    marked. *Id.*

3           In concluding that Dr. Budwey's opinion was unpersuasive, the ALJ found that it was

4    both unsupported and inconsistent. AR at 35-37. As for consistency, the ALJ found that Dr.

5    Budwey's opinion was inconsistent with Plaintiff's conservative mental health treatment, *id.* at

6    36; her "unremarkable mental health findings or intact mental health functioning in exams

7    performed by other examiners," *id.* (listing multiple record citations); her typically intact

8    memory, *id.* (listing multiple record citations); her pleasant and cooperative demeanor, *id.*

9    (listing multiple record citations); and her other activities, *id.* at 37 (listing multiple record

10   citations).

11          Plaintiff argues in a conclusory manner in her opening brief that the ALJ's cited

12   consistency reasons fail to undermine Dr. Budwey's opinion because the opinion was "based on

13   her clinical findings" and "none of the 'activities' are valid reasons to reject" the opinion. (Dkt.

14   # 16 at 4.) This bare assertion of error – absent further explanation – is insufficient, and the Court

15   declines to "manufacture arguments where none is presented." *Indep. Towers*, 350 F.3d at 929.

16   The Court, however, notes that in reply, Plaintiff specifically addresses the ALJ's consistency

17   findings regarding her activities and her "intact memory." (Dkt. # 23 at 3-4.) Plaintiff argues that

18   the ALJ erred because "some" of the ALJ's cited activities occurred after Plaintiff saw Dr.

19   Budwey in June 2018. (*Id.* at 3 (citing to AR at 764-65, therapist Meas' July 2019 visit notes

20   detailing Plaintiff's "busy schedule").)

21          However, the July 2019 activities to which Plaintiff cites do not undermine the ALJ's

22   consistency findings. Unlike the evidence regarding Plaintiff's relationship status, the ALJ was

23   citing to Plaintiff's activities to demonstrate inconsistency – not misrepresentation. AR at 37. In

1    other words, the ALJ relied on the cited activities to demonstrate that Plaintiff was not as

2    functionally limited as Dr. Budwey opined. The activities cited by the ALJ, including the July

3    2019 activities that post-dated Dr. Budwey's opinion, all occurred during the relevant period in

4    this case and prior to the ALJ's May 2021 hearing decision and Plaintiff's September 2021 date

5    last insured. Plaintiff's argument is therefore without merit.

6           Regarding consistency, Plaintiff also argues in reply that none of the ALJ's record

7    citations in support of his assertion that Plaintiff's memory was "typically intact" were to records

8    from psychologists who performed actual memory testing. (Dkt. # 23 at 4; *see also* AR at 36

9    (citing *id.* at 728-751, 755-67, 1158-1179, including therapist Meas' multiple visit records from

10   May 2018 through May 2019 noting that Plaintiff's memory was "intact").) However, Plaintiff

11   cites to no authority requiring that her therapist's multiple memory observations be based on

12   actual memory tests as opposed to her interviews and therapy sessions. Therapist Meas had a

13   treating relationship with Plaintiff for years, and she observed Plaintiff's memory to be intact

14   during the relevant period. *See* AR at 728-751, 755-67, 1158-1179. The ALJ was entitled to rely

15   on the medical evidence regarding Plaintiff's memory that he did in evaluating Dr. Budwey's

16   opinion, including Ms. Meas' visit records.

17          For these reasons, the Court concludes that the ALJ did not err in his consistency findings

18   in support of his evaluation of Dr. Budwey's opinion. Under *Woods*, this alone suffices for the

19   ALJ to conclude that Dr. Budwey's opinion was unpersuasive. *See* 32 F.4th at 792-94 & n.4

20   (consistency and supportability constitute two distinct factors that should be treated separately

21

22

23

1   and with "precision"). Accordingly, it is unnecessary for the Court to address the supportability

2   factor.[5]

3              3.       *Examining DSHS Psychologist, Dr. Kimberly Wheeler*

4              In addition to Dr. Budwey, another DSHS psychologist, Dr. Kimberly Wheeler,

5   interviewed Plaintiff and administered mental status examinations on two occasions, September

6   17, 2019, and March 18, 2021. AR at 1187-91, 1395-1400. Dr. Wheeler also reviewed Plaintiff's

7   medical records and subsequently issued medical opinions following both of her examinations.

8   *Id.* at 1187, 1395. Contrary to Dr. Budwey, Dr. Wheeler found that Plaintiff's memory and fund

9   of knowledge were within normal limits following both examinations. *Id.* at 1191, 1400. Dr.

10  Wheeler, however, agreed with Dr. Budwey that Plaintiff's concentration and judgment were not

11  within normal limits. *Id.*

12             In September 2019, Dr. Wheeler opined that Plaintiff's mental impairments caused five

13  marked or severe limitations. AR 1189. Dr. Wheeler agreed with Dr. Budwey that Plaintiff

14  possessed marked limitations in her abilities to adapt to changes in a routine work setting and to

15  communicate and perform effectively in a work setting. *Id.* Dr. Wheeler further opined that

16  Plaintiff possessed even more restrictive limitations than the marked limitation opined to by Dr.

17  Budwey in terms of her ability to complete a normal workday and work week without

18  interruptions from psychologically based symptoms. *Id.* Additionally, Dr. Wheeler opined that

19

20  _____

    [5] In terms of supportability, the ALJ found that Dr. Budwey's opinion was unsupportable because she
21  reviewed no records prior to interviewing Plaintiff and was unable to compare Plaintiff's assertions with
    objective medical findings. AR 35-36. The ALJ also noted that Dr. Budwey's opinions were based on
    subjective statements from Plaintiff that were inconsistent with the record and with Plaintiff's activities.
22  *Id.* at 36. Plaintiff argues that the ALJ erred in his finding that the information Plaintiff provided to the
    ALJ regarding her relationship status was unreliable. *See id.* at 36; (Dkt. # 16 at 4; dkt. # 23 at 3.) The
23  Court would be inclined to reject the argument for the same reasons detailed above regarding Plaintiff's
    and D.C.'s testimony. However, as noted, the Court need not reach the ALJ's supportability findings
    because it concludes that his consistency findings were supported by substantial evidence.

1   Plaintiff's ability to perform activities within a schedule and to maintain regular attendance were

2   severely limited. *Id.* She ultimately opined that Plaintiff's overall functional limitations were

3   severe. *Id.*

4        In March 2021, Dr. Wheeler again opined that Plaintiff's overall functional limitations

5   remained severe. AR at 1398. She found that Plaintiff possessed the same restrictive degree of

6   limitations as in 2019, but additionally opined that Plaintiff's ability to set realistic goals and to

7   plan independently had regressed from a moderate to a marked limitation. *Id.*

8        The ALJ concluded that both of Dr. Wheeler's opinions were unpersuasive, finding that

9   they were both unsupportable and inconsistent for reasons identical to those he offered in

10  rejecting Dr. Budwey's opinions. AR 37-40. Regarding consistency, Plaintiff reasserts the same

11  arguments that she made regarding Dr. Budwey (dkt. # 16 at 7, dkt. # 23 at 5), which, for the

12  reasons stated above, are conclusory and insufficient to challenge the ALJ's evaluation of Dr.

13  Wheeler's opinions. *See Indep. Towers*, 350 F.3d at 929. To the extent that Plaintiff also

14  intended to reiterate her arguments regarding the ALJ's findings as to her "intact memory" and

15  activities, the Court rejects them for the same reasons as those stated above regarding Dr.

16  Budwey's opinion. Again, the Court need not reach the ALJ's supportability findings – or the

17  Plaintiff's related arguments – because it concludes that the ALJ's consistency findings were

18  supported by substantial evidence. [6] *See Woods*, 32 F.4th at 792-94 & n.4.

19

20

21

22

---

23  [6] Regarding supportability, in addition to the same findings that the ALJ made regarding Dr. Budwey, the
    ALJ further found that Dr. Wheeler's September 2019 opinion lacked supportability in part because
    Plaintiff misrepresented her methamphetamine use, AR at 38, and because it was internally inconsistent
    with her own examination findings. *Id.* at 39 (citing *id.* at 1399-1400).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

4.      *Non-Examining State Agency Consultants*

### a.      Psychologist, Dr. Rita Flanagan

In March 2019, on initial review, state agency non-examining psychologist, Dr. Rita Flanagan, reviewed Plaintiff's records and opined that Plaintiff was mildly or not significantly limited in most of the functional capacity categories as pertained to her mental impairments. AR at 123, 127-28. Dr. Flanagan opined that Plaintiff possessed a moderate limitation in her ability to concentrate, persist, and maintain pace; a moderate limitation in her social interactions, including with the general public; a mild limitation in her ability to understand, remember, or apply information; and a mild limitation in her ability to adapt or manage herself. *Id.*

The ALJ found persuasive and adopted Dr. Flanagan's opinion regarding Plaintiff's functional limitations, concluding that the opinion was consistent with the longitudinal record for the same reasons that the ALJ found Drs. Budwey's and Wheeler's opinions were inconsistent. AR at 34-35. Specifically, the ALJ found that Dr. Flanagan's opinion was consistent with Plaintiff's conservative mental health treatment, *id.* at 34; her "unremarkable mental health findings or intact mental health functioning in exams performed by other examiners," *id.* (many record citations); her typically intact memory, *id.* (multiple record citations); her pleasant and cooperative demeanor, *id.* at 35 (multiple record citations); and her other activities, *id.* (multiple record citations). Additionally, the ALJ also found that Dr. Flanagan's opinion was consistent with Plaintiff's "typically alert and oriented mental state." *Id.* at 34 (multiple record citations). [7]

---

[7] Subsequently, on reconsideration, state agency non-examining psychologist, Dr. John Robinson, agreed with and adopted Dr. Flanagan's opinion. *See* AR at 151-52, 156-57. The ALJ noted, though, issues with Dr. Robinson's medical qualifications; therefore, the ALJ considered Dr. Robinson's statement not as a medical opinion, but as a third party lay witness or consultant. *See id.* at 35. He found that it was persuasive as a third-party statement because it was consistent with Plaintiff's "overall evidence of record and with Dr. Flanagan's . . . opinion." *Id.* Plaintiff does not challenge the ALJ's treatment of Dr. Robinson's opinion; thus, the Court does not address it. (Dkt. # 16 at 9-10; dkt. # 23 at 6 n.6) (noting that

1    Again, Plaintiff's argument is conclusory regarding the ALJ's consistency findings.

2    Plaintiff asserts simply, with no further elaboration, that the ALJ failed to "adequately explain"

3    why Dr. Flanagan's opinion was more consistent than the opinions from Drs. Budwey and

4    Wheeler. (Dkt. # 16 at 10.) However, as the Commissioner accurately notes, the ALJ included

5    more than one hundred record citations in support of his related findings. *See* AR at 34-35.

6    Plaintiff, in reply, again with no explanation, suggests that "none of those [one] hundred

7    selective cites" adequately explain why Dr. Flanagan's opinion was more consistent.[8] (Dkt. # 23

8    at 7.) Plaintiff then appears to argue that because Drs. Budwey and Wheeler were examining

9    psychologists, the ALJ should have afforded more weight to their opinions. (*Id.* at 6-7.)

10    However, Plaintiff's argument regarding the ALJ's consideration of the examining

11    relationship factor was specifically rejected by the Ninth Circuit in *Woods. See* 32 F.4th at 792.

12    There, the Ninth Circuit reiterated that while an ALJ is required to consider supportability and

13    consistency, the ALJ "may, but [is] not required to" explain how they considered the remaining

14    three factors, including "the relationship factors" listed in the regulations. *Id.* It is only when two

15    or more distinct medical opinions are equally supported and consistent that the ALJ is required to

16    articulate how they considered factors other than supportability and consistency. *See id.* ("In that

17    case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'"

18    (quoting 20 C.F.R. § 404.1520c(b)(3))).

19

20    "in numerous cases, ALJs have given no weight to Dr. Robinson's opinion because he rendered opinions at a time when he was not licensed as a psychologist").

21    [8] Plaintiff asserts in a footnote that she "explained the limited probative value of these cited findings in

22    her discussion of Dr. Budwey's and Dr. Wheeler's opinions," but that is not the case. (Dkt. #23 at 7 n.7); *cf.* (dkt. #23 at 3-5.) The Court has detailed above the arguments that Plaintiff made regarding Dr. Budwey's and Dr. Wheeler's opinions, and with the exception of limited arguments as to the ALJ's

23    findings regarding her "intact" memory and activities, Plaintiff has not addressed most of the citations – or even most of the reasons – proffered by the ALJ regarding his evaluation of the medical opinions.

Here, as discussed above, the Court has already concluded that the ALJ was entitled to discount the opinions of Drs. Budwey and Wheeler based on the ALJ's consistency findings. Accordingly, the ALJ was not required to consider the examining versus non-examining relationships of the psychologists with Plaintiff. Moreover, Plaintiff has not shown error with the ALJ's numerous findings and record citations in support of his adoption of Dr. Flanagan's non-examining opinion.[9]

### b.    Physicians, Drs. Gordon Hale and Dennis Koukol

The only medical opinions the ALJ possessed regarding Plaintiff's physical impairments were from non-examining state agency consulting physicians, Drs. Gordon Hale and Dennis Koukol, on initial review and reconsideration. *See* AR at 33; *see also id.* at 124-26 (Dr. Hale's March 2019 RFC opinion); *id.* at 154-56 (Dr. Koukol's July 2019 RFC opinion). Both Drs. Hale and Koukol opined that based on Plaintiff's physical impairments, which included hypertension, diabetes, and obesity, Plaintiff was capable of light work with additional postural and environmental limitations. *Id.* at 125-26, 154-55.

The ALJ concluded that Drs. Hale's and Koukol's opinions were persuasive and adopted an RFC that mirrored the limitations included in their opinions. AR at 26, 33-34. In support, the ALJ found that both opinions were consistent with Plaintiff's typically conservative care; her improvement with treatment; her "frequently noted normal or stable gait" and lack of consistent need for an assistive device; Plaintiff's typically benign musculoskeletal and neurological findings; a lack of acute distress in most exams; a frequent absence of edema and conservative

---

[9] The Court notes Plaintiff's additional argument that the ALJ failed to adequately address the supportability of Dr. Flanagan's opinion. (Dkt. # 23 at 7.) However, like Drs. Budwey and Wheeler, under *Woods*, the ALJ's consistency findings alone suffice for the ALJ to conclude that Dr. Flanagan's opinion was persuasive, and it is therefore unnecessary for the Court to address the supportability factor. *See* 32 F.4th at 792-94 & n.4 (consistency and supportability constitute two distinct factors that should be treated separately and with "precision").

1    treatment when edema was present; and Plaintiff's daily activities. *Id.* at 33-34 (multiple

2    citations to record).

3           Plaintiff again argues that the ALJ's summary of her activities was "exaggerated." (Dkt.

4    # 16 at 9.) However, for the reasons discussed above regarding Plaintiff's testimony, the Court

5    disagrees and concludes that the ALJ's findings regarding her activities were supported by

6    substantial evidence.

7           Additionally, Plaintiff argues that in evaluating Drs. Hales' and Koukol's opinions, the

8    ALJ erred in his findings regarding her edema and in his failure to consider her need to elevate

9    her legs. (Dkt. # 16 at 9.) In support, Plaintiff notes that in June 2019, Dr. Carl Skinner

10   diagnosed her with peripheral edema and ordered her to elevate her legs. *See* AR at 1194,

11   1201-06; *see also* (Dkt. # 23 at 6 (citing AR at 1194 (Dr. Lundborg's July 2020 diabetic foot

12   exam), 1201, 1206).) She thus contends that the ALJ was "incorrect to assert that there is no

13   evidence of edema." (Dkt. # 16 at 9.)

14          Plaintiff, however, mischaracterizes the ALJ's findings. While the ALJ noted that

15   Plaintiff "frequently" lacked edema at most examinations, he nevertheless recognized that edema

16   "ha[d] been present" on occasion. AR at 34. When it was present, the ALJ noted that it had been

17   treated conservatively. *Id.* Plaintiff has not shown otherwise. The 2019 occurrence of pedal

18   edema that Plaintiff notes in her brief was limited in time and scope, as recognized by the ALJ

19   and demonstrated by the longitudinal record and the ALJ's record citations. (Dkt. # 16 at 9); AR

20   at 34 (multiple citations); *id.* at 450-51 (Plaintiff's primary care physician, Dr. Taylor, notes that

21   Plaintiff "denies edema" at November 2018 visit); *id.* at 1052 (Dr Taylor notes the presence of

22   "lower extremity" edema in September 2019); *cf. id.* at 929 (Dr. Taylor notes in June 2020 that

23   Plaintiff had not been seen since her last visit in September 2019, and, upon examination,

1   observes that Plaintiff is not suffering from edema at the time); *id.* at 1302 (Plaintiff is not

2   suffering from edema at November 2020 visit and examination by Dr. Taylor). Moreover, the

3   ALJ's finding regarding Plaintiff's conservative care when she indeed suffered from edema was

4   supported by substantial evidence. *See id.* at 1192-94 (during a July 2020 diabetic foot exam, Dr.

5   Lundborg observes ingrown toenails and mild edema in Plaintiff's lower extremities and

6   recommends that she continue using compression socks, inspect her feet daily, and maintain her

7   blood sugar levels). Plaintiff has not shown that Dr. Skinner's June 2019 recommendation that

8   she elevate her legs was an ongoing recommendation; nor did subsequent visits with her primary

9   care physician in June 2020 or with Dr. Lundberg in July 2020 include such a recommendation.

10  *See id.* at 922-32 (Dr. Taylor's visit notes); *id.* at 1194 (Dr. Lundberg's visit notes).

11          Other than the edema and activities discussed above, Plaintiff has offered no additional

12  arguments regarding Drs. Hale's and Koukol's opinions and has thus failed to establish error

13  with this aspect of the ALJ's decision.

14          **D.     The ALJ Did Not Err in His RFC Assessment and Step Five Hypothetical.**

15          Because the Court concludes that the ALJ appropriately assessed the testimony and

16  medical opinions, his related RFC determination was also supported by substantial evidence.

17  Additionally, the ALJ's hypothetical to the VE, which accurately reflected Plaintiff's RFC, and

18  his resulting step five determination based on the VE testimony were likewise supported by

19  substantial evidence. *See Magallanes*, 881 F.2d at 756-57.

20

21

22

23

1

## V.   CONCLUSION

2          For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this

3 case is **DISMISSED** with prejudice.

4          Dated this 2nd day of March, 2023.

5

6          _____
           MICHELLE L. PETERSON
7          United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23